**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MOHAMAD RIDA-AHMAD
HASSOUN and GHONWA HASSOUN,

      Plaintiffs,                        Case No. 22-11377
v.                                  Hon. Denise Page Hood

CITY OF GROSSE POINTE FARMS,
*et. al.*,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 43] AND CLOSING ACTION

### I.    INTRODUCTION

Before the Court is Defendants City of Grosse Pointe Farms, Thomas Dionne, Edward Wierszeswkie, and Frank Zielinski's (collectively "Defendants"), motion for summary judgment as to all counts alleged by Plaintiffs. [ECF No. 43]. The motion is fully briefed. For the reasons stated herein, Defendants' motion is GRANTED.

### II.    BACKGROUND

This is an excessive force case. On or about September 10, 2020, Plaintiff Mohammad Rida-Ahmad Hassoun ("Hassoun") was driving in the City of Grosse Pointe Farms when Officer Thomas Dionne ("Dionne") responded to the scene and

observed Hassoun traveling at a low speed and continuously scraping the curb with his passenger side wheels. [ECF No. 6, PageID.34]. Dionne initiated a traffic stop with emergency lights. **Dionne Dash Camera Video at 2:10**. Hassoun significantly slowed down upon the police lights being activated, however, did not bring his car to a stop until about fifteen seconds later. *Id*. at 2:36. Dionne commanded Hassoun to "turn the vehicle off" through the PA system in his squad car. *Id*. Hassoun failed to turn his vehicle off and again began driving at about three miles per hour with his right turn signal on. *Id*. at 2:54. Several seconds later, Hassoun stopped his vehicle for a second time. *Id*. at 3:24.

Dionne approached the driver's side of Hassoun's vehicle with his weapon drawn and began giving verbal commands including "turn the car off, show me your hands, put your hands on the wheel." *Id*.; [ECF No. 43-1, PageID.682]. Hassoun complied with each of Dionne's commands. **Dionne Body Camera Video at 2:02**. Once the car door was opened, Dionne commanded Hassoun repeatedly to step out of the vehicle. *Id*. at 2:33. Amid his commands, Dionne says he thinks Hassoun may be diabetic seconds before pulling Houssoun from the driver's seat and onto the ground and putting hand cuffs on him. *Id*. at 2:40. Hassoun can be observed attempting to speak but unable to form words. *Id*. Multiple officers can be heard saying that Hassoun may be diabetic and after Dionne removed Hassoun from the vehicle, Officer Hurner (a non-party to this

2

matter) appears to say, "I don't want to kill a diabetic again." **Hurner Body Camera Video at :59**. Officer Hurner calls a medic about 30 seconds after Hassoun is handcuffed. *Id*. at 1:28.

Hassoun alleges that he suffered severe injury and damage as a result of his encounter with the Grosse Pointe Farms Police Department, including three major surgeries with more to come in the future. [ECF No. 6, PageID.40]. Hassoun and his wife, Ghonwa Hassoun (collectively, "Plaintiffs"), allege multiple claims stemming from this encounter including: Count I – Violation of 42 USC § 1983 Unlawful Detention and Seizure Fourth, Fifth, Eighth, Ninth, Fourteenth Amendments; Count II – Violation of 42 USC § 1983 as to City of Grosse Pointe Farms Unlawful Detention and Seizure Fourth, Fifth, Eighth, Ninth, Fourteenth Amendments; Count III – Conspiracy to Violate and Interfere with the Civil Rights of Plaintiff per 42 USC 1983; Count IV – Constitutional Deprivation Municipal/Supervisory Liability as to Defendants City of Grosse Pointe Farms, SGT. Thomas Dionne, SGT. Frank Zielinski, and Officer-in-charge Edward Wierszewski; Count V – Assault and Battery by Police Officers; Count VI – Gross Negligence; Count VII – Intentional Infliction of Emotional Distress; Count VIII – Malicious Prosecution; and Count IX – Loss of Consortium as to Mrs. Ghonwa Hassoun. [ECF No. 6]. Plaintiffs allege that Defendants' actions have caused major

3

health issues including permanent scarring, multiple surgeries, multiple hospital stays, and permanent and debilitating physical injury.

Defendants move this Court to dismiss all of Plaintiffs' claims.

## III.   ANALYSIS

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment on some or all counts. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to establish that there is no genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A).

"As the party moving for summary judgment, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Courts "must accept Plaintiff's evidence as true and draw all reasonable inferences in her favor[.]" *Id*. The Court "may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact

remains for trial." *Id*. "Where, as here, there is video evidence of the events underlying Plaintiff's allegations, a court views the facts as depicted in the video." *Bell v. Korkis*, No. 2:19-CV-13565, 2024 WL 69807, at *4 (E.D. Mich. Jan 5, 2024); *Cunningham v. Shelby County, Tennessee*, 994 F.3d 761, 763 (6th Cir. 2021).

### A. Count I – Violation of 42 U.S.C. § 1983 Unlawful Detention and Seizure Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment Rights

Count I of Plaintiffs' First Amended Complaint brings claims under 42 U.S.C. § 1983 against Officers Dionne, Wierszeswki, and Zielinski (the "Officer Defendants") for violation of his Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment Rights.[1]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6 Cir. 2010). In excessive force cases, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490

---

[1] Because the Supreme Court has made clear that claims that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure are properly analyzed under the Fourth Amendment's objective reasonableness standard rather than a substantive due process standard, the Court will not address Plaintiff's substantive due process claims and solely focus on Plaintiff's Fourth Amendment claim. See *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989).

U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007).

"At the summary judgment stage … once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record* … the reasonableness of [the defendant's] actions … is a pure question of law." *Dunn v. Matatall*, 549 F.3d 348, 354 (6th Cir. 2008) quoting *Scott v. Harris*, 550 U.S. 372, 381 n. 8, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

Here, Officer Dionne was alerted to an individual driving erratically albeit at idle speed. The severity of such an act could potentially be dangerous given the quick and unpredictable impact on the driver and others on the road. When Officer Dionne attempted to conduct a traffic stop, Hassoun did not immediately pull over and stop his vehicle. Upon being commanded to turn the vehicle off, Hassoun did not comply and started driving at an even slower speed. After about 3-5 minutes of

6

trying to get Hassoun to stop his vehicle, the vehicle came to a stop. As in *Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008), Officer Dionne could not have known what threat Hassoun may have posed. *Dunn*, 549 F.3d 348, 354 (6th Cir. 2008). Like Dunn, Hassoun did not fully respond to the attempts to pull him over, drove erratically, and was slow to comply with commands.[2]

When Officer Dionne approached the vehicle and took steps to remove Hassoun from the vehicle, Plaintiff did not comply and even reached toward the middle console. See **Hurner Body Camera Video at :40**. It was not unreasonable for Officer Dionne to believe that Plaintiff might be reaching for a weapon or that he was an impaired driver or that his continued presence behind the wheel posed a threat to Plaintiff, the responding officers, and others on the road. Though Dionne suspected that Plaintiff may have been experiencing a diabetic episode, it was reasonable for Officer Dionne to physically remove Plaintiff from the vehicle until other possibilities could be ruled out.

Even if Plaintiff was "attempting to slowly comply with Officer Dionne's commands[,]" as he argues, mere seconds elapsed between the time that Officer Dionne gained access to the vehicle and Plaintiff being removed. [ECF No. 48, PageID.858]. It is unreasonable, as Plaintiff suggests, that Officer Dionne knew or

---

[2] The Court recognizes that Dunn and the other cases cited by Defendants are factually distinguishable as the defendants in those cases led the police on high-speed chases before stopping their vehicles and were suspected of more severe crimes. However, the threat of an erratic driver, no matter how slow, presents a risk of harm.

should have known that Plaintiff was not intoxicated and in fact having a medical emergency. *Id*.

Because the record does not establish that the Officers' conduct was objectively unreasonable under the circumstances, it is unnecessary to determine whether the Officers would be entitled to qualified immunity. 549 F.3d at 355. Defendant's motion for summary judgment is granted as to Count I.

### B. City of Grosse Pointe Farms

Count II of Plaintiffs' First Amended Complaint brings claims under 42 USC § 1983 against the City of Grosse Pointe Farms for Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment violations. [ECF No. 6, PageID.42]. "To state a claim against a municipality pursuant to § 1983, a plaintiff must plausibly allege that her constitutional rights were violated, and that the municipality had a 'policy or custom' that caused the violation." *Linden v. City of Southfield, Michigan*, 75 F.4th 597, 605 (6th Cir. 2023). The Sixth Circuit has determined that "[a] municipality cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Roell v. Hamilton Cnty., Ohio/Hamilton Cnty. Bd. of Cnty. Commissioners*, 870 F.3d 471, 487 (6th Cir. 2017) quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004).

Hassoun argues that he can maintain his *Monell* claim against the City of Grosse Pointe Farms because "*Monell* liability does not solely hinge on direct

8

constitutional violations by individual officers, but also on whether the City's policies, customs, or failures contributed to those violations." [ECF No. 48, PageID.881]. Hassoun's argument is only partially correct. To succeed on a claim of municipal liability based on policy or custom, the movant must still establish that a constitutional violation occurred. [3]

Hassoun cites cases including *Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020), *Leach v. Shelby Cty. Sherriff*, 891 F.2d 1241 (6th Cir. 1989), and *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985) to support his argument that municipal liability is appropriate here. However, each of these cases are distinguishable from the facts here and significantly so because each of the courts found that unconstitutional behavior occurred. Plaintiff argues that the need for better training here was obvious, but the record does not support such a finding.

## C. Conspiracy

Count III alleges that the Officers conspired to violate and interfere with the civil rights of Hassoun. [ECF NO. 6, PageID.44]. To prove a civil conspiracy, "[plaintiff] must show that (1) a 'single plan' existed, (2) [defendant] shared in the general conspiratorial objective to deprive [plaintiff] of his constitutional (or federal statutory rights, and (3) an overt act was committed in furtherance of the

---

[3] Count IV is duplicative of Counts I and II and is dismissed for the reasons previously stated herein.

conspiracy that caused injury to [plaintiff]." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Generally, a corporation cannot conspire with itself and employees cannot be liable for conspiracy under the Civil Rights Act. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 838 (6th Cir. 1994). One exception exists where the challenged activity takes place outside the course of employment. *Id.*

Plaintiffs argue that the Officers conspired and took deliberate actions to use excessive force against Hassoun and covered up fellow officer actions by fabricating a theory that Hassoun was reaching for the gear shift and posed a threat. [ECF No. 48, PageID.892]. Neither the record nor Plaintiffs' briefing support such a finding. Plaintiffs' briefing merely recites the standard of review of a civil conspiracy and then addresses Defendants' assertion that the intra-corporate conspiracy doctrine should not apply. [ECF No. 48, PageID.888-9]. Because Plaintiffs have failed to support their claim that the officer defendants engaged in a conspiracy, summary judgment is granted as to Count III.[4]

### D. State Law Claims

Plaintiffs' State law claims also fail. Counts V-VIII allege theories of liability under Michigan State law. Specifically, Plaintiffs allege: Count V – Assault and Battery against all Police Defendants; Count VI – Gross Negligence;

---

[4] Even if Plaintiffs provided adequate support for their civil conspiracy claim, it would be barred by the intra-corporate conspiracy doctrine because there is no evidence that Defendants acted outside of the scope of their employment.

Count VII – Intentional Infliction of Emotional Distress; and Count VIII – Malicious Prosecution. [ECF No. 6]. Counts V-VII hinge on a finding that the Defendants engaged in the use of excessive force. Because the Court has found that the Defendants did not engage in excessive force, Counts V-VIII are dismissed.

## IV. CONCLUSION/ORDER

In light of the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment [ECF No. 43] is GRANTED;

IT IS FURTHER ORDERED that this Order disposes all pending claims before the Court and closes the case.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

DATED: March 31, 2026